FILED
AUG - 1 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. PATRICK STEVEN CUTBIRTH, Defendant. | Criminal Case No. '08 CR 2560 H<br>I N F O R M A T I O N<br>Title 18, U.S.C., Sec. 1343 - Wire Fraud |

COUNT 1

(18 U.S.C. Section 1343 -- Wire Fraud)

At all times relevant to this information:

1. Defendant PATRICK STEVEN CUTHBERT (hereinafter "defendant CUTBIRTH") did business as Del Mar Jet, LLC (hereinafter "Del Mar Jet"),in Del Mar, CA, within the Southern District of California and elsewhere. Del Mar Jet was in the business of aircraft management, providing a number of services to its clients, including, but not limited to, finding aircraft for clients to purchase; providing service to aircraft owned by its clients, including, but not limited to purchase of insurance, overseeing maintenance of aircraft, fuel, leasing and arranging for pilots and flights.

2. Dr. Irwin Mark Jacobs and Joan Klein Jacobs were co-

trustees of the Irwin Mark Jacobs and Joan Klein Jacobs Family Trust (hereinafter "the Trust"). All contracts entered into between the Trust and Defendant PATRICK STEPHEN CUTBIRTH and Del Mar Jet were signed by Irwin Mark Jacobs, Trustee.

3. Bombardier, Inc. (hereinafter "Bombardier") is a Canadian corporation, based in Quebec, Canada. Bombardier is primarily engaged in the business of manufacturing and selling business aircraft and other forms of transportation. Learjet, Inc., an American manufacturer of business and military aircraft, is a subsidiary of Bombardier located in Wichita, Kansas. Learjet is marketed as Bombardier Learjet (hereinafter "Learjet").

4. The Challenger 604 is a wide-body intercontinental business jet which can seat up to twelve passengers, depending on the seat configuration. Based upon a Learjet design, it is produced by Bombardier. The Trust purchased and took delivery of a Challenger 604 aircraft on or about February 25, 2000.

5. The Global Express is a larger long-range business jet built by Bombardier. It is capable of seating between eight and nineteen people, depending on the seating configuration. In April 2000, the Trust entered into a contract with Bombardier to purchase a Global Express aircraft, which Bombardier would deliver to the Trust when it was completed. Part of the agreement for the purchase of the Global Express was that the Trust had the option to sell the Challenger 604 back to Bombardier at a fixed price.

6. The Trust also entered into a "Smart Parts" maintenance contract with Bombardier. Under this contract, the Trust agreed to pay Bombardier a flat rate of approximately $360 per flight hour for Bombardier to provide all routine maintenance work on the aircraft.

7. Bombardier billed the Trust for "Smart Parts" maintenance, but sent the invoices to Del Mar Jet, as agent for the Trust, for payment. Non-routine maintenance work, repairs and upgrades not covered by the "Smart Parts" contract would also be performed by Bombardier and billed to the Trust, but the invoice was sent to Del Mar Jet, as agent for the Trust. Del Mar Jet, upon receipt of the Bombardier invoices, would deliver them to the Trust. The Trust, in turn, would then pay Del Mar Jet for the invoices. Del Mar Jet was to then deposit the Trust payments for Bombardier into its bank account, and, in turn, send payment to Bombardier for the "Smart Parts" and other aircraft maintenance invoices.

8. The contract between the Trust and Bombardier for the purchase of the Global Express aircraft further provided that the aircraft was to be delivered to the Trust by a specific date. If it was delivered after that date, a penalty clause in the contract provided for a credit to be established by Bombardier, for the benefit of the Trust, which could be utilized by the Trust to offset any future "Smart Parts" or non-routine maintenance work performed on the aircraft.

9. On or about March 5, 2000, the Trust entered into a contract with Defendant PATRICK STEPHEN CUTBIRTH, providing that (a) in full payment for his and Del Mar Jet's efforts in evaluating and testing of various aircraft, resulting in purchase by the Trust of the Challenger 604 and possible future purchase of a Global Express or comparable aircraft, the Trust would pay defendant PATRICK STEPHEN CUTBIRTH $125,000, not including out-of-pocket expenses incurred in those efforts; and (b) an additional payment, of $6,000 a month, would be made to Defendant PATRICK STEPHEN CUTBIRTH and Del Mar Jet by the

Trust, for various aircraft management services, as specified in Defendant PATRICK STEPHEN CUTBIRTH's proposal of March 4, 2000, with expenses to be billed separately. Billing of the Trust for management services, "Smart Parts" and other maintenance and repairs, in connection with the Challenger 604, began at the end of March 2000. The Trust took delivery of the Global Express aircraft on approximately March 31, 2002 and the Challenger 604 was then purchased back by Bombardier.

THE SCHEME TO DEFRAUD

10. Beginning in or about March 2000, and continuing thereafter until in or about June 2002, within the Southern District of California and elsewhere, defendant PATRICK STEPHEN CUTBIRTH, did knowingly devise and attempt to devise a material scheme and artifice to defraud and to obtain money and property, by means of materially false and fraudulent pretenses, representations and promises, and the concealment and omissions of material facts, by the means described in paragraphs 11 through 21 of this Indictment.

11. It was a part of the scheme and artifice to defraud that beginning in or about March 2000, and continuing up through June 2002, Defendant PATRICK STEVEN CUTBIRTH did receive numerous invoices for "Smart Parts" maintenance and other repair work performed on the Challenger 604 and Global Express aircraft that were owned by the Trust, totaling approximately $480,880.28.

12. It was a further part of the scheme and artifice to defraud that when each invoice was received by Del Mar Jet from Bombardier, for "Smart Parts" maintenance and other work performed by Bombardier on the Trust's aircraft, Defendant PATRICK STEVEN CUTBIRTH hand-delivered that invoice to the Trust's bookkeeper and obtained

payment for that invoice.

13. It was a further part of the scheme and artifice to defraud that after personally obtaining payment from the Trust for each Bombardier invoice, Defendant PATRICK STEVEN CUTBIRTH deposited that payment from the Trust into a bank account utilized by Del Mar Jet and Defendant PATRICK STEVEN CUTBIRTH to pay both business and personal expenses.

14. It was a further part of the scheme and artifice to defraud that beginning in approximately March 2000 and continuing up through approximately June 2002, that Defendant PATRICK STEVEN CUTBIRTH, after depositing approximately $480,881 of the Trust's money into a bank account of Del Mar Jet, did not utilize those funds to pay Bombardier for those invoices received.

15. It was a further part of the scheme and artifice to defraud that Defendant PATRICK STEVEN CUTBIRTH, after obtaining those payments from the Trust, for the purpose of paying Bombardier for "Smart Parts" maintenance and other repair work on the Trust's aircraft, improperly and unlawfully diverted approximately $480,881 of those funds for the benefit of both himself and his business.

16. It was a further part of the scheme and artifice to defraud that Defendant PATRICK STEVEN CUTBIRTH, when contacted by Bombardier about payment of its invoices for "Smart Parts" maintenance and repairs to the Trust's Challenger 604 aircraft, avoided payment by making false promises that payment would be forthcoming.

17. It was a further part of the scheme and artifice to defraud that Defendant PATRICK STEVEN CUTBIRTH failed to disclose to Irwin Jacobs or the Trust that he had diverted the moneys paid to him by the Trust, for his own use and benefit, and did not utilize that

money to pay the Bombardier invoices.

18. It was a further part of the scheme and artifice to defraud that, rather than forward to Bombardier the $480,881 he had received from the Trust for payment of Bombardier's invoices for parts, labor or equipment provided by Bombardier and its subsidiary, Learjet for the Trust's aircraft, that Defendant CUTBIRTH, in June 2002, twice directed Bombardier personnel, by means of interstate wire communications, between San Diego, CA and Montreal, Canada or Wichita, Kansas, to make unauthorized deductions from the Trust's credit memo, including the $480,881 that he had previously diverted to the business account of Del Mar Jet, in order to pay in full the Trust's outstanding debt to Bombardier. These unauthorized deductions from the credit memo permitted Defendant CUTBIRTH to conceal from the Trust his fraudulent diversion of funds from the Trust, begun by him in or about March 2000.

19. It was a further part of the scheme and artifice to defraud that Defendant PATRICK STEVEN CUTBIRTH, when asked by a Trustee Irwin Jacobs about the status of the Trust's credit memo with Bombardier and whether it still contained the original amount provided by Bombardier, deliberately concealed from that Trustee that he had authorized the above-described deductions, totaling $480,881, from the credit memo in June 2002 without the knowledge of or authorization from the Trust.

THE WIRE COMMUNICATION

20. On or about August 18, 2001, within the Southern District of California, and elsewhere, Defendant PATRICK STEPHEN CUTBIRTH, for the purpose of executing and attempting to execute a scheme to defraud and to obtain money and property by false and fraudulent

pretenses, representations, and promises, and the concealment of material facts, did transmit and cause to be transmitted by wire communication in interstate commerce, writings, signs, and signals, a communication, to wit: a telephone facsimile, from Randolph Demosthenes, Senior Financial Technician at Bombardier Inc., Canadair, in Montreal, Quebec, Canada, to Defendant PATRICK STEVEN CUTBIRTH, in San Diego, California, in response to an earlier call from Defendant PATRICK STEVEN CUTBIRTH, seeking a copy of the July 20, 2001 invoice in which certain "Smart Parts" services performed on the Challenger 604 Aircraft owned by the Trust were detailed.

All in violation of Title 18, United States Code, Section 1343.

DATED: July 31, 2008.

KEVIN J. KELLY
Acting United States Attorney

By: ______________________
DAVID L. KATZ
Assistant U.S. Attorney